IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

SUZANNE B. ARTERS,                      §
                                        §
                    Plaintiff,          §
                                        § Civil Action No. 3:07-CV-0957-D
VS.                                     §
                                        §
UNIVISION RADIO BROADCASTING            §
TX, L.P., et al.,                       §
                                        §
                    Defendants.         §

MEMORANDUM OPINION
AND ORDER

In this employment discrimination case, plaintiff appeals the magistrate judge's order denying her motion to compel discovery. She also seeks under Fed. R. Civ. P. 56(f) a continuance of her obligation to respond to defendants' motion for summary judgment. For the reasons that follow, the court affirms the order of the magistrate judge and grants plaintiff's Rule 56(f) motion to the extent of directing that she file her summary judgment response within 21 days of the date this memorandum opinion and order is filed.

I

Plaintiff Suzanne B. Arters ("Arters") sues defendants Univision Radio Broadcasting TX L.P. and Univision Communications, Inc. (collectively, "Univision"), alleging age discrimination and retaliation under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.*, and the Texas Commission on Human Rights Act, Tex. Labor Code Ann. §§ 21.001-21.556 (Vernon

2006),[1] and pendent state-law claims for breach of contract, quantum meruit, and unjust enrichment for work performed and commissions earned but not paid, defamation, and tortious interference with contracts and/or business opportunities.  Arters worked as an Account Executive ("AE") for Univision from 2002 until her termination in 2006.  Univision owns five radio stations in the San Antonio area: (1) KCOR-AM, (2) KCOR-FM, (3) KROM, (4) KXTN, and (5) KBBT "The Beat."  Throughout her employment, Arters' primary responsibility was to sell radio air time to advertisers on certain Univision stations.  When Arters was first hired, the advertising sales employees were divided into three teams.  Team One sold ads on KXTN and was managed by Rory Charitan ("Charitan").  Team Two, to which Arters was assigned, sold ads for stations KROM, KCOR-FM and KCOR-AM and was managed by Ernie Quinones ("Quinones").  Team Three sold advertising for KBBT (hereafter sometimes referred to as "The Beat") and was managed by Barbara Carreon ("Carreon").  Until sometime in 2005, Arters sold advertising only for KROM and KCOR-AM.  In 2005, after the sales quotas for the 2006 budget had been set, Univision made the following two changes: it combined Teams

---

[1]As the court noted in *King v. Enterprise Leasing Co. of DFW*, 2007 WL 2005541 (N.D. Tex. July 11, 2007) (Fitzwater, J.): "'Chapter 21 was entitled the Texas Commission on Human Rights Act until the abolishment of the Commission on Human Rights.  In 2004, the 'powers and duties' of the Commission on Human Rights were transferred to the Texas Workforce Commission Civil Rights Division.'"  *Id.* at *1 n.1 (quoting *Tex. Dep't of Criminal Justice v. Guard*, 2007 WL 1119572, at *2 n.3 (Tex. App. 2007, no pet. h.) (not designated for publication)).

One and Two, and it assigned advertising clients to a single AE so that each advertising client would work with a single AE in placing its advertisements on KXTN, KROM, KCOR-FM, or KCOR-AM (the four stations formerly assigned to Team One or Team Two). Univision has referred to this four-station grouping as the "Spanish Cluster," but Arters disputes the representation that all of them used Spanish language formats. *See* P. Br. 8-9[2] ("KCOR-FM switched formats from Spanish-only music to bilingual, and then it changed formats again to Spanish only . . . . English language commercials are often broadcast even on Univision's Spanish stations, and on KXTN the disk jockeys speak mostly English or a blend of English and Spanish."). It is undisputed, however, that The Beat was an English-language radio station with a hip-hop musical format. After these changes were made, the AEs who comprised Teams One and Two were requested to redo their 2006 sales projections in light of the changes. None of the changes, however, affected the AEs assigned to sell advertising for KBBT.

Arters' compensation was based solely on commissions, which were calculated to be a certain percentage of the sales revenues she generated, provided that the customer paid the invoice within a certain amount of time. Arters contends that the stated reason

---

[2]As used in this memorandum opinion and order, "P. Br." means Arters' motion for reconsideration, filed January 26, 2009. "P. Supp. Br." means her supplement to her motion for reconsideration filed February 17, 2009.

for her termination (poor sales performance in 2006) is a pretext and that the real reason for her termination was her age (48 at the time of termination).

Arters moved for an order compelling Univision to respond fully and completely to various written discovery requests. The magistrate judge conducted a hearing and denied the motion with respect to information sought from AEs employed to obtain advertising for The Beat, concluding that such AEs were not comparably situated to Arters. Arters appeals the order as it relates to the following requested information:

> 1. The following information for each [AE] who was assigned to KBBT "The Beat": His or her complete personnel file, including at a minimum documents reflecting original date of hire, date of birth, Performance Improvement Plans ("PIPs"), written warnings, monthly budget underperformance memos, and all disciplinary actions of any kind.
>
> 2. For each of the years 2004, 2005 and 2006, for all AE's assigned to any of the five San Antonio radio Stations (including The Beat), each AE's: (i) actual sales commissions earned and/or paid, and all related supporting calculations, (ii) promotions and demotions; (iii) personnel documents reflecting the termination of employment if applicable; and (iv) severance or separation agreement if applicable.
>
> 3. For each of the years 2004, 2005 and 2006, for all AE's assigned to any of the five San Antonio radio Stations (including The Beat), each AE's: (i) Total sales quotas, (ii) Actual Total sales amounts booked and collected, (iii) New Business quotas, and (iv) Actual New Business amounts sold and collected.

- 4 -

> 4. For each of the years 2004, 2005 and 2006,
> for all AE's assigned to any of the five San
> Antonio radio Stations (including The Beat), a
> listing of each AE's assigned commercial
> accounts, by calendar year, and any memos to
> or from management or other AE's as it relates
> to the setting of budget numbers, quotas
> and/or assigned accounts.

P. Br. 2 (emphasis and footnotes omitted). Arters maintains that she is entitled to this information from The Beat AEs[3] because the scope of discovery in discrimination and retaliation cases is necessarily broad, and because the magistrate judge based his determination that The Beat AEs are not comparably situated on erroneous findings of fact. She moves for reconsideration of ("appeals") the order.

## II

The standard of review for a decision of a magistrate judge in a nondispositive matter is governed by Rule 72(a), which provides that "[t]he district judge in the case must . . . modify or set aside any part of the order that is clearly erroneous or is contrary to law." *Id.* "'The "clearly erroneous" standard applies to the factual components of the magistrate judge's decision.'" *Lahr v. Fulbright & Jaworski, L.L.P.,* 164 F.R.D. 204, 208 (N.D.

---

[3]To the extent Arters also argues that she is entitled to receive, but has not yet received, the above information from the other AEs not assigned to The Beat, the court upholds the magistrate judge's decision because Arters has not adequately briefed those arguments, and it is not evident from the record that the magistrate judge's rulings on those requests were legally erroneous, based on clearly erroneous factual findings, or an abuse of discretion.

Tex. 1996) (Fitzwater, J.) (quoting *Smith v. Smith,* 154 F.R.D. 661, 665 (N.D. Tex. 1994) (Fitzwater, J.)).  "'The district court may not disturb a factual finding of the magistrate judge unless, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed.'"  *Id.* (quoting *Smith,* 154 F.R.D. at 665) (internal quotation marks omitted).  "'If a magistrate judge's account of the evidence is plausible in light of the record viewed in its entirety, a district judge may not reverse it.'"  *Id.* (quoting *Smith,* 154 F.R.D. at 665) (internal quotation marks omitted).  The legal conclusions of the magistrate judge are reviewable *de novo*, and the district judge "reverses if the magistrate judge erred in some respect in [his] legal conclusions."  *Id.*  "[T]he abuse of discretion standard governs review of 'that vast area of choice that remains to the [magistrate judge] who has properly applied the law to fact findings that are not clearly erroneous.'"  *Id.* (quoting *Smith,* 154 F.R.D. at 665) (ellipsis omitted; alteration in original).

III

A

Under Rule 26(b)(1),

> [p]arties may obtain discovery regarding any
> nonprivileged matter that is relevant to any
> party's claim or defense—including the
> existence, description, nature, custody,
> condition, and location of any documents or
> other tangible things and the identity and

- 6 -

> location of persons who know of any
> discoverable matter.   For good cause, the
> court may order discovery of any matter
> relevant to the subject matter involved in the
> action.   Relevant information need not be
> admissible at the trial if the discovery
> appears reasonably calculated to lead to the
> discovery of admissible evidence.

The court may limit discovery, however, if "the burden or expense

of the proposed discovery outweighs its likely benefit, considering

the needs of the case, the amount in controversy, the parties'

resources, the importance of the issues at stake in the action, and

the importance of the discovery in resolving the issues."   Rule

26(b)(2)(C).   Moreover, courts should not allow parties to "roam in

the shadow zones of relevancy to explore matter which does not

presently appear germane on the theory that it might conceivably

become so."   *Boyd v. Am. Airlines, Inc.,* 2002 WL 32360294, at *1

(N.D. Tex. Oct. 17, 2002) (Kaplan, J.) (internal quotation marks

omitted) (quoting *Spina v. Our Lady of Mercy Med. Ctr.,* 2001 WL

630481, at *2 (S.D.N.Y. June 7, 2001)).

                                    B

     Arters notes that the scope of discovery in employment

discrimination cases is necessarily broad because these types of

cases turn largely on complicated inferences concerning an

employer's state of mind.   The court recognizes that "[a]

plaintiff who must shoulder the burden of proving that the reasons

given for [her] discharge are pretextual should not normally be

denied the information necessary to establish that claim."

                               - 7 -

*Marshall v. Westinghouse Elec. Corp.*, 576 F.2d 588, 592 (5th Cir. 1978). Nevertheless, "[t]hat rule does not . . . permit a plaintiff to 'go fishing' and a trial court retains discretion to determine that a discovery request is too broad and oppressive." *Id.* Although Arters is entitled to discovery within the scope established by Rule 26(b)(1), the magistrate judge determined that the information Arters requested regarding The Beat AEs was not relevant to her case——i.e., was outside the scope of her Rule 26 entitlement——because The Beat AEs were not in fact comparably situated to Arters. During the hearing he stated: "All I am saying, as matters currently stand, I do not find any occasion to find that The Beat employees are comparators, and I am not going to allow that discovery." P. App. Ex. A at 10.[4] And in his written ruling the magistrate judge reasoned:

---

[4]The court is citing the record in this manner because Arters did not number her appendix in the manner required by the court's local civil rules. Under N.D. Tex. Civ. R. 72.1(d), "[a] party who relies on documentary (including an affidavit, declaration, deposition, answer to interrogatory, or admission) or non-documentary evidence to support or oppose objections filed under Fed. R. Civ. P. 72(a) must include such evidence in an appendix that complies with LR 7.1(i)(2)-(4)." Rule 7.1(i)(4), in turn, provides, in relevant part, that "[e]ach page of the appendix must be numbered legibly in the lower, right-hand corner. The first page must be numbered as "1," and succeeding pages must be numbered sequentially through the last page of the entire appendix (i.e., the numbering system must not re-start with each succeeding document in the appendix)." Arters did not number the pages of her appendix in the manner required.

> [B]ecause neither Quinones nor Charitan ever
> supervised KBBT [AEs] and [Arters] never
> solicited advertising sales for KBBT, because
> the format of KBBT was distinct in content and
> demographics from those of the other four
> stations, and because the [AEs] assigned to
> KBBT solicited advertising sales exclusively
> for KBBT, [Arters] has failed to demonstrate
> entitlement to review such materials for KBBT
> [AEs] since none is a person comparabl[y]
> situated to [Arters'] position with
> [Univision].

Mag. J. Jan. 16, 2009 Order 3.

"[I]f the magistrate judge has determined that discovery is irrelevant, it is not enough on appeal to maintain that it *is* relevant. The appealing party must demonstrate that the magistrate judge committed legal error in making [his] relevance determination or did so based on clearly erroneous fact findings." *AssistMed, Inc. v. Conceptual Health Solutions, Inc.*, 2006 WL 1489422, at *4 (N.D. Tex. May 11, 2006) (Fitzwater, J.). In her appeal, Arters does not contend that the magistrate judge committed legal error in holding that discovery regarding employees who are not comparably situated is irrelevant to her case. Indeed, to establish a claim of disparate treatment, Arters must show that Univision gave preferential treatment to a younger employee under "nearly identical" circumstances. *See Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 901 (5th Cir. 2002) (citing *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507 (5th Cir. 2001)). The circumstances are not "nearly identical" when the difference between the plaintiff's circumstances and the circumstances of

- 9 -

those alleged to be similarly situated accounts for the difference in treatment received from the employer. *See Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 221 (5th Cir. 2001). "The 'nearly identical' standard, when applied at the *McDonnell Douglas* pretext stage is a stringent standard—employees with different responsibilities, different supervisors, different capabilities, different work rule violations, or different disciplinary records are not considered to be 'nearly identical.'" *Dotson v. Gulf*, 2006 WL 44071, at *7 (S.D. Tex. Jan. 9, 2006) (citing *Okoye*, 245 F.3d at 514-15). Therefore, the question raised by Arters' appeal is whether, contrary to the magistrate judge's determination, the information regarding The Beat AEs is relevant to Arters' claims because The Beat AEs are in fact comparable employees; on this question, Arters' reliance on a general entitlement to broad discovery provides little guidance.

C

In the Fifth Circuit, comparably-situated employees typically are identified by the plaintiff's work unit. *See Marshall*, 576 F.2d at 592 ("[I]n the context of investigating an individual complaint [of discrimination] the most natural focus is upon the source of the complained of discrimination the employing unit or work unit." (citing *EEOC v. Packard Elec. Div., General Motors Corp.*, 569 F.2d 315 (5th Cir. 1978)). "To move beyond [the work unit] the plaintiff . . . must show a more particularized need and

- 10 -

relevance." *Id.* (holding that trial court's refusal of discovery encompassing 32 districts and three manufacturing plants was not erroneous).[5]

Here, Arters' work unit did not include the AEs assigned to sell advertising for The Beat.  At the time Arters was hired, Team Two, managed by Quinones, comprised her work unit.  After the 2005 changes were implemented, Arters' work unit expanded to include the AEs previously assigned to Team One and managed by Charitan.  At no time during her employment did Arters' work unit include The Beat AEs, who were managed by Carreon.  Arters argues, however, that she is entitled to discovery beyond her work unit because, regardless of any distinction that may exist on paper between her work unit

---

[5]Arters contends that the case law limiting discovery to a plaintiff's work unit is inapplicable because it pertains to "instances involving bargaining unit union employees who are treated differently under 'nearly identical circumstances,'" whereas her case involves "identical responsibilities of exempt non-union employees (the AEs in [T]he Beat as well as in the [other stations]) who perform comparable work for the same employer and/or the same manager at the same geographic location."  P. Reply 5. Arters' argument is not entirely clear.  To the extent she argues that the case law limiting discovery to a plaintiff's work unit is inapplicable to non-union employee cases, the court disagrees.  In *Marshall* and *Packard* the Fifth Circuit addressed the discovery to which a plaintiff asserting discrimination (or the agency investigating plaintiff's discrimination claims) was entitled. Arters offers no principled reason for limiting these cases only to claims involving union employees.  Moreover, to the extent Arters argues that the holdings of these cases (which deny certain discovery) are distinguishable either because The Beat AEs were a part of her work unit or because she has shown a particularized need and relevance for their information (i.e., comparable work, same employer, same geographic location), Arters in fact argues within the framework of the cases; she does not posit that the framework is inapplicable.

and the AEs assigned to The Beat, The Beat AEs are in fact interchangeable with any other AE and comparable with herself. Because Arters essentially argues that the magistrate judge erred in his relevance determination based on erroneous factual findings, not on legal error, "the question of relevance in this instance is essentially a factual determination concerning the interrelation or lack thereof of different group of facts, [and the court] must uphold the [magistrate judge's] determination unless it is clearly erroneous." *See EEOC v. Packard Elec. Div.*, 569 F.2d at 318 (reviewing district court's denial of enforcement of Equal Employment Opportunity Commission discovery subpoenas where district court based its decision on lack of relevance).

IV

Arters contends that the magistrate judge's determination that The Beat AEs are not comparably situated is based on the following erroneous findings of fact: (1) "until some time in 2005 [Arters] was selling advertising only for KROM and KCOR-AM," Mag. J. Jan. 16, 2009 Order 2, and "[d]uring her employment [Arters] never solicited advertising clients for The 'Beat—98.5,'"; (2) "neither Quinones nor Charitan ever supervised KBBT [AEs]," *id.* at 3; and (3) "the [AEs] assigned to KBBT solicited advertising sales exclusively for KBBT," *id.* Arters submits that "[a]lthough she chose KXTN and sold mostly for KXTN for a period of time after her initial hire, during her employment [she] also sold advertising

- 12 -

that was broadcast on each of the five Stations, including The Beat." P. Br. 6. Specifically, Arters avers in her declaration[6] that "on at least one occasion during [her] employment [she] solicited and placed a significant piece of business for The Beat by selling a special package called 'Premios a lo Nuestro,' which . . . aired on each of the five Stations, including The Beat." P. Br. Ex. A at 5. Arters also avers that "[w]hen [Carreon], The Beat's manager, was out of the office due to business travel, vacation or illness, the managers of the other Stations——[Quinones] and [Charitan]——would oversee The Beat's assigned [AEs]." P. Br. 6. She contends that The Beat AEs were encouraged to sell, and did sell, air time on the other four stations relating to special events like Cinco de Mayo, the Hispanic State Fair, and 16 de Setiembre. P. Br. Ex. A. at 5. And Paz Schroeder ("Schroeder") and Michelle Acquart ("Acquart"), AEs assigned to the other four stations, "were allowed to sell, and did routinely sell, to all five Stations, including The Beat[.]" *Id.* at 5.

Arters also repeats some of the same arguments she made before

---

[6]Univision argues that the court should exclude Arters' declaration, filed as "Exhibit A" to her appeal, because (1) she did not file the declaration before the magistrate judge, and (2) she did not include the declaration in her appendix. Because considering this evidence does not alter the outcome of this appeal, the court will assume *arguendo* that the declaration should not be excluded.

the magistrate judge.  *Compare* P. Mot. to Compel ¶¶ 6-12[7] ("All five of [the] radio stations are managed and operated from the same Univision offices where [Arters] worked . . . . Like [Arters], all of The Beat AEs also reported directly or indirectly up to Kirby Kaden . . . . Like [Arters], The Beat AEs also sold advertising air time for Univision to businesses located in and around San Antonio, Texas, and all performed the same work and had the same responsibilities as did [Arters] . . . .  The Beat AEs attended weekly Friday sales meetings . . . along with [Arters] and the other AEs.") *with* P. Br. 7-10 ("[N]o matter which of the five Stations an [AE] was assigned to on paper, all AEs . . . [s]ell the same product (air time) . . . [w]ork for Stations which are managed and operated from the same offices . . . [r]eported up to the same director of sales (Kirby Karden) . . . [a]ttended the same sales meetings together[.]").

     Viewing the record in its entirety, the court holds that the magistrate judge did not commit clear error in his factual determination that The Beat AEs are not comparably situated with Arters.  Despite Arters' contention that The Beat AEs sold the same product (air time) as did the AEs in Arters' work unit (formerly Team One and Team Two), the magistrate judge did not clearly err in

---

[7]Citations to P. Mot. to Compel are to Arters' amended motion to compel, filed November 12, 2008.

finding[8] that air time on an English-speaking station that plays hip-hop music and has a younger audience (The Beat) is not equivalent to air time on a Spanish-speaking or bilingual station that does not play hip-hop music and has a relatively older audience (KXTN, KROM, KCOR-FM, or KCOR-AM).   In addition to selling different products, The Beat AEs also answered to a different local sales manager.   As Arters' sales manager Quinones testified, he "had *nothing* to do with the BEAT."   The Beat AEs did not report to him directly or indirectly, he was not privy to commission statements from The Beat, he "had no information about [The Beat AEs'] performance," and, consequently, he drew no comparisons between the performance of AEs who worked for Teams One or Two and the performance of those who worked for The Beat.   Ds. Resp. App. 11, 19, and 22 (emphasis added).[9]   And while The Beat AEs officed

---

[8]The following exchange between Arters' counsel and the magistrate judge occurred during the hearing:

> [Arters' Counsel]: . . . [The Beat AEs] perform all the same duties in the same location, the same product, same everything.
> THE COURT: They're not the same product.
> [ARTERS]: Well, it's [all air time].
> THE COURT: Well, I think you could probably say anyone that's in sales that works for a corporation is in the same group.   I don't accept your argument that these folks are similarly situated.

P. App. Ex. A at 8.

[9]Citations to "Ds. Resp. App." are to the appendix filed March 9, 2009 in support of Univision's opposition response to Arters' motion for reconsideration.   Citations to "Ds. Resp." are to the

- 15 -

on the same *floor* as did the other AEs and attended some meetings with the other AEs, there is evidence in the record that they did not share the same *office* and that the common sales meetings did not discuss specific performance or budget goals.[10]

The alleged errors in the magistrate judge's order, moreover, do not undermine his finding that The Beat AEs are not comparably situated.  The fact that Arters and other AEs who were not assigned to The Beat occasionally sold air time on The Beat——particularly in the form of packages that aired on all five stations (as opposed to advertising specifically designed for The Beat)——does not change the fact that The Beat AEs sold primarily for The Beat while the other AEs did not.[11]  Regardless whether Arters ever sold air time on The Beat, it is undisputed that Arters, whose age discrimination

---

response itself.

[10]The focus of the Friday sales meetings was instead on the "science of the sale, the actual technology of sales and different ways to approach the sale." Ds. Resp. App. 14-15.  Revenue figures and billings were discussed in one-on-one meetings with the individual AE or in manager meetings.  *Id.* at 12-13 ("Q. Okay. Now, were there separate meetings . . . at which revenue figures and billings would be reviewed with all AE's?  A. [Quinones] Not with all AE's overall.  Individually, there was a one-on-one meeting with each individual AE in which that particular AE's performance versus budget and goal was discussed.  In addition to that, the managers had a meeting on Tuesday mornings, that's when the performance in terms of revenue for the stations, as well as the market itself, would be discussed.")

[11]Indeed, by Arters' own admission, she "*sold mostly* for KXTN for a period of time after her initial hire," P. Br. 6, and Schroeder and Acquart, the non-Beat AEs Arters references as selling ads that aired on The Beat, were "*primarily* assigned to . . . [the non-Beat stations]."  P. Br. Ex. A ¶ 8-iii.

- 16 -

claim is based on allegations that her quotas were improperly set and that she was held to a different standard of performance than other AEs, never had a quota for selling advertising on The Beat and was never compared to The Beat AEs.  Similarly, the fact that Quinones and Charitan, the managers of Teams One and Two, would sometimes oversee The Beat AEs when The Beat's manager (Carreon) was on vacation, sick, or traveling for work, does not change the fact that Quinones and Charitan had no significant role in evaluating the performance of The Beat AEs, and that in reaching the conclusion that Arters' performance was significantly lower than that of her peers, Charitan and Quinones never compared Arters to The Beat AEs.[12]  *See* Ds. Resp. App. 3, 22.[13]

---

[12]For these reasons, Arters' allegation that Univision segregated its youngest employees into The Beat and then treated those employees more favorably than the other AEs does not make the requested information regarding The Beat AEs relevant to her wrongful termination case.  Arters does not allege, for example, that she was wrongfully denied a transfer to The Beat based on her age.  Rather, Arters asserts that she was wrongfully terminated because of her age, and that Univision's stated reason (poor performance) is pretextual.  Because Arters' managers never compared Arters' performance to The Beat AEs in reaching their employment decision, the performance standards placed on The Beat AEs (who, again, were not similarly situated to Arters) are not relevant to Arters' discrimination claims.  *See Paquin v. Fed. Nat'l Mortgage Ass'n*, 119 F.3d 23, 29 n.6 (D.C. Cir. 1997) ("Because [defendant employer] attempts to justify [plaintiff employee's] termination by comparing his performance to other senior vice presidents, we affirm the district court's decision declining to compel discovery regarding performance of individuals below the senior vice president level.").

[13]In the July 28 warning sent to Arters, Charitan noted that the "current average year to date new business billing January through December, *for an account executive selling the Spanish*

V

In a supplemental brief in support of her appeal, Arters contends that the Lillie Ledbetter Fair Pay Act of 2009 ("The Fair Pay Act"), Pub.L.No. 111-2, § 3, 123 Stat. 5 (Jan. 29, 2009), entitles her to each AE's actual sales commissions earned and/or paid and all related supporting calculations, total sales quotas, actual total sales amounts booked and collected, new business quotas, and actual new business amounts sold and collected. *See* P. Supp. Br. 2-3. The court disagrees.[14]

The Fair Pay Act pertains to the timeliness of *discriminatory compensation claims*. Arters alleges a cause of action for wrongful termination and retaliation, but her complaint cannot fairly be construed as alleging a cause of action for discriminatory pay. In fact, throughout her initial brief, Arters argues that the younger AEs assigned to The Beat had the same commission rates and/or

---

*Cluster* is $179,257." Ds. Br. 3, 6. By comparison, Arters' new business billing was $59,524, which, according to Charitan, was the lowest of any AE selling *the Spanish Cluster*. *Id.* (emphasis added).

[14]Arters timely filed her appeal. One week later, the court gave Arters an additional two weeks to cure a procedural defect in her appeal by filing an appendix and, if desired, a transcript. Arters then filed her supplemental brief within that two-week extension, but more than one month after the magistrate judge filed his order. Univision argues that, because the court did not grant Arters leave to file additional objections, her supplemental brief is untimely under Rule 72(a) and should not be considered. Because the court rejects the arguments Arters makes in the supplemental brief, the court will address them on the merits, despite the fact that they were first raised in the supplemental brief.

commission structures. *See* P. App. Ex. A at 3 ("[Arters Counsel]: Your Honor, it's my understanding that all the [AEs] for all five radio stations that are all owned by Univision were all compensated on the basis of a draw initially and then 100 percent commission."); P. Br. 3 ("The commission rates and structure are believed to be the same for AE's across all five Univision radio stations."); *id.* at 7-8 ("[A]ll [AEs] . . . have approximately the same commission rates and/or commission structures[.]"). Because Arters has no reason to believe that her compensation was discriminatory——and indeed has argued to the contrary——she is not entitled to undertake a fishing expedition to see if she can find anything that might support a cause of action for discriminatory pay.

In sum, the magistrate judge did not commit clear error in finding that The Beat AEs are not similarly situated to Arters. Accordingly, the magistrate judge's order denying Arters' motion to compel such information is affirmed.[15]

_____

[15]In the closing paragraphs of her brief, Arters appears to argue that sales reports produced by Univision via email on January 20, 2009 "appear to contain erroneous and false information." P. Br. 11. Specifically, Arters recalls that she sold new business air time on KXTN in 2004, but her New Business sales are reflected as zero in the 2004 reports. Because the contention has no bearing on whether the magistrate judge committed legal or clear factual error in denying discovery of information regarding The Beat AEs, it is inapposite to Arters' appeal, and the court need not consider it here. If Arters and Univision cannot resolve the issue, Arters may seek leave to file a motion to compel.

VI

The court now considers Arters' motion for a Rule 56(f) continuance.

A

Arters contends that she cannot oppose Univision's summary judgment motion on the merits because, as of January 20, 2009, she has not yet received the documents that the magistrate judge ordered Univision to produce, and portions of the magistrate judge's order are clearly erroneous and she is entitled to additional discovery. Arters maintains that among the other information still to be received are performance reviews, sales quotas, and budget information pertaining to similarly-situated, younger employees. Arters posits that this information will establish that Univision's reason for terminating her is pretextual.

B

Arters filed this suit in May 2007 and amended her complaint in July 2007. The court's scheduling order set a discovery deadline of August 1, 2008, which was reset by the court, per the parties' agreement, for 120 days. Arters filed her first motion to compel on July 3, 2008, withdrew it a month later, and filed an amended motion to compel on November 12, 2008. The court referred the motion to the magistrate judge, and a hearing was scheduled for January 13, 2009. In advance of the summary judgment motion

- 20 -

deadline (it, too, had been extended 120 days from the original September 1, 2008 deadline), the parties discussed Arters' request for additional discovery in light of the January hearing on her amended motion to compel.   Univision offered to reset all deadlines, including the discovery deadline, to permit Arters to conduct additional discovery, so long as the time interval between the dispositive motion deadline and the trial setting was maintained.   Arters declined the offer, however, and Univision filed its motion for summary judgment on December 30, 2008.

On January 16, 2009 the magistrate judge entered his order——addressed above——granting in part and denying in part Arters' amended motion to compel.[16]   On January 20, 2009 Arters filed this Rule 56(f) motion to continue Univision's summary

---

[16]Specifically, the magistrate judge held:

> [Arters] is entitled to review documents which show calculations of these account executives' [assigned to sell advertising for KCOR-AM, KCOR-FM, KROM, and/or KXTN] proposed sales objections (quotas) for 2004, 2005, 2006 and any revised projections for 2006.  Similarly she is entitled to review adverse performance evaluations or reports with respect to this group as well as any adverse employment actions taken against any person who was so employed in 2004 through 2006.  However, . . . [Arters] has failed to demonstrate entitlement to review such materials for KBBT account executives since none is a person comparabl[y] situated to [Arters'] position with [Univision].

Mag. J. Jan. 16, 2009 Order 3 (emphasis omitted).

judgment motion, and on January 27, 2009 Arters filed her appeal of the magistrate judge's order.  The court has today affirmed the order.

C

Rule 56(f) provides:

> If a party opposing [a summary judgment] motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) deny the motion; (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or (3) issue any other just order.

The continuance authorized by Rule 56(f) is a safe harbor built into the rules so that summary judgment is not granted prematurely. *Union City Barge Line, Inc. v. Union Carbide Corp.,* 823 F.2d 129, 136 (5th Cir. 1987).  "Rule 56(f) motions are generally favored and should be liberally granted."  *Beattie v. Madison County School Dist.,* 254 F.3d 595, 606 (5th Cir. 2001).  To comply with the Rule, the party opposing summary judgment must file the specified non-evidentiary affidavit, explaining why she cannot oppose the summary judgment motion on the merits.  *Union City Barge Line,* 823 F.2d at 136.  The party may not rely on vague assertions that additional discovery will produce needed, but unspecified, facts. *Id.* at 137 (citing *SEC v. Spence & Green Chem. Co.,* 612 F.2d 896, 901 (5th Cir. 1980)).  She must demonstrate why she needs additional discovery and how the additional discovery will create a genuine issue of material fact.  *Krim v. BancTexas Group, Inc.,* 989 F.2d

- 22 -

1435, 1442 (5th Cir. 1993).

Rule 56(f) permits a court to grant a continuance when the nonmovant has not had the opportunity to conduct discovery that is essential to her opposition to a motion for summary judgment. *Wright v. Blythe-Nelson,* 2001 WL 1012701, at *2 (N.D. Tex. Aug. 15, 2001) (Fitzwater, J.) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 n.5 (1986)).  When a party has had an opportunity to conduct discovery but has not diligently pursued it, however, this lack of diligence cannot supply the basis for granting a continuance.  *See Livecchi v. City of Grand Prairie,* 2009 WL 306123, at *3 (N.D. Tex. Feb. 9) (Fitzwater, C.J.) (denying plaintiff's Rule 56(f) motion where plaintiff had not diligently pursued discovery), *appeal docketed*, No. 09-10214 (5th Cir. Mar. 12, 2009); *Int'l Shortstop, Inc. v. Rally's, Inc.,* 939 F.2d 1257, 1267 (5th Cir. 1991) (noting that if nonmoving party has not diligently pursued discovery of necessary evidence, court need not accommodate request for continuance).  Rule 56(f) offers relief where the nonmovant has not had a full opportunity to conduct——not to complete——discovery.  The two concepts are distinct.  *See McCarty v. United States,* 929 F.2d 1085, 1088 (5th Cir. 1991) (per curiam) (rejecting nonmovant's contention that district court abused its discretion by failing to permit him to complete discovery before granting summary judgment, and holding that "Rule 56 does not require that discovery take place before granting

summary judgment.").

D

Construing Arters' brief and affidavit liberally, the court finds that, with respect to the documents that the magistrate judge ordered Univision to produce, Arters has sufficiently identified specific facts that she seeks through additional discovery that will enable her to raise a genuine issue of material fact as to Univision's reasons for her termination.   Arters requests the following information from similarly-situated employees (i.e., the account executives who were assigned to sell air time for KCOR-AM, KCOR-FM, KROM, and/or KXTN): sales quotas and projections for 2004, 2005, and 2006; adverse performance evaluations or reports; and all adverse employment actions taken against any of these employees. P. Mot. Cont. ¶¶ 6, 8[17]; Urmin Aff. ¶¶ 3, 4.[18]   Arters maintains that this additional discovery will show that the sales performance of some or all of the younger, similarly-situated employees was inferior to her sales performance, which in turn will give rise to the inference that Univision's stated reason for her termination (poor sales performance) is pretextual.   P. Mot. Cont. ¶ 10.[19]

---

[17]Citations to P. Mot. Cont. are to Arters' Rule 56(f) motion, filed January 20, 2009.  Citations to "Ds. Resp. Mot. Cont." are to defendants' response, filed February 19, 2009.

[18]Arters did not file the required evidence appendix in support of this motion either.  *See supra* note 4.

[19]Although Univision contends that Arters' *affidavit* contains only vague assertions that do not specify how the additional

- 24 -

Arters has therefore identified a genuine issue of material fact that justifies a continuance.[20]  *See Paquin v. Fed. Nat'l Mortgage Ass'n*, 119 F.3d 23, 28 (D.C. Cir. 1997) (finding that district court erred in not granting plaintiff-employee's Rule 56(f) motion for the performance evaluations of similarly-situated employees where defendant-employer defends the termination based on plaintiff's written performance evaluations); *Hollander v. Am. Cyanamid Co.*, 895 F.2d 80, 84-85 (2d. Cir. 1990) (vacating summary judgment where district court refused to compel defendant to

---

discovery will defeat the motion for summary judgment and therefore cannot support her Rule 56(f) motion, the court finds in Arters' *brief* specific reasons that are sufficient to satisfy Rule 56(f). *See Wichita Falls Office Assocs. v. Banc One Corp.*, 978 F.2d 915, 919 (5th Cir. 1992) ("Although it is preferred that non-movants present an affidavit to support a continuance of discovery, there is no stringent procedure that will bar litigants access to further discovery.  In order to trigger the rule non-movants need only submit an 'equivalent statement preferably in writing' that conveys the need for additional discovery." (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986))).

[20]While Arters could have perhaps been more diligent by filing her amended motion to compel earlier, the court does not find that she acted in such a way as to bar a Rule 56(f) continuance, *cf. Livecchi v. City of Grand Prairie*, 2009 WL 306123, at *3 (N.D. Tex. Feb. 9, 2009) (Fitzwater, C.J.) (denying Rule 56(f) continuance where plaintiff waited over 17 months after he filed suit to initiate *any* discovery), especially considering that "Rule 56(f) motions are generally favored and should be liberally granted," *Beattie*, 254 F.3d at 606.  Arters first requested the documents ordered to be produced by the magistrate judge in requests for production sent to Univision on December 7, 2007 and August 29, 2008.  Two months after the first request for production, Arters informed Univision that its compliance was deficient.  Arters then continued to communicate with Univision about its production deficiencies until she filed her amended motion to compel on November 12, 2008.

provide information about termination of employees similarly situated to plaintiff that could help prove his claim that employer's explanation for his discharge was pretextual).

Regarding the documents that Arters seeks through her appeal of the magistrate judge's order, however, this court's decision affirming the order supports the conclusion that a continuance is unwarranted since these documents are not even discoverable. *See Tarantino v. Pierce,* 1997 WL 528054, at *3 (N.D. Tex. Aug. 15, 1997) (Fitzwater, J.) ("A continuance is not warranted where the discovery the [Rule 56(f)] movant hopes to obtain is not pertinent to any of the claims in the lawsuit.").

Although Arters has identified a basis for continuing her response deadline pending receipt of discovery that the magistrate judge ordered Univision to produce, so far as the court can tell, Arters has now received these materials. Language in the magistrate judge's order suggests that Univision produced, prior to the hearing on the motion to compel, documents showing the calculations of the proposed sales objectives (quotas) for 2005 and 2006 and any revised projections for 2006 for the similarly-situated employees (i.e., those AEs assigned to sell advertising for KCOR-AM, KCOR-FM, KROM, and/or KXTN), and that the records for 2004 would be produced on or before January 20, 2009. *See* Mag. J. Jan. 16, 2009 Order 3 n.2 ("In [Univision's] counsel's post-hearing letter to the court [Univision's attorney] advised that the records

- 26 -

for 2004, which were not previously produced, have been located and will be made available on or before January 20, 2009."). The adverse employment evaluations or reports of the similarly-situated employees and any adverse employment actions taken against such employees for years 2004-2006 appear to have been produced on or before February 20, 2009. *See* Ds. Resp. Mot. Cont. 2 & n.1 ("[Univision] has produced this information for 2006," and "[Univision] [is] finalizing the review of numerous personnel files for the referenced information for years 2004 and 2005 and will produce those documents on or before February 20, 2009.").

Consequently, because Arters apparently has received all the materials that justify her request for a continuance, absent a showing that she has *not* received these documents, she is only entitled to a minimum continuance of the deadline by which she must respond to Univision's summary judgment (i.e., one day to receive notice of this decision and the usual twenty days provided by local rule to respond). Arters must therefore file a response to Univision's motion for summary judgment within 21 days of the date this memorandum opinion and order is filed.

- 27 -

                    *       *       *

      The magistrate judge's January 16, 2009 order is affirmed, and

Arters' January 20, 2009 motion for continuance is granted to the

extent set forth in this memorandum opinion and order.

      **SO ORDERED**.

      May 12, 2009.


                                    _____
                                    SIDNEY A. FITZWATER
                                    CHIEF JUDGE